IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY WILLIAMS and ANTWAN TAYLOR, SR., as parents, natural guardians, and next friends of A.T., a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 24 CV 5043<br><br>Judge Georgia N. Alexakis |

## MEMORANDUM OPINION AND ORDER

In March 2021, plaintiff Mary Williams gave birth to her son, A.T., at Saint Anthony Hospital in Chicago, Illinois. Shortly after he was born, doctors diagnosed A.T. with a severe brachial plexus injury. Mary Williams and Antwan Taylor, Sr., as parents, natural guardians, and next friends of A.T., bring this suit against the United States, alleging that the doctor who delivered A.T. negligently caused his injury and that the government is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*. The government has moved to dismiss the suit on timeliness grounds. For the reasons discussed below, the Court denies the government's motion.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need only contain factual allegations that, accepted as

1

true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

At the pleading stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff," as it does in the background section that follows. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). But "allegations in the form of legal conclusions are insufficient." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## BACKGROUND

From October 2020 to March 2021, while pregnant with A.T., Mary Williams received routine prenatal care from Lawndale Christian Health Center. [1] ¶ 48. Lawndale is a federally qualified health center that receives federal funding from the United States Public Health Service ("PHS") pursuant to 42 U.S.C. § 254b. *Id.* ¶ 4. At 11:49 p.m. on March 21, 2021, Dr. Kara Greeley delivered A.T. at Saint Anthony Hospital. *Id.* ¶¶ 38, 55–71. During his delivery, A.T. suffered a shoulder dystocia injury. *Id.* ¶¶ 68, 70–71.

2

The day after he was born, after experiencing seizure-like activity, A.T. was transferred from Saint Anthony Hospital to the neonatal intensive care unit at the University of Chicago's Comer Children's Hospital where he was observed for shoulder dystocia and "abnormal arm movements." *Id.* ¶¶ 75–76. A subsequent brain MRI revealed findings in the nerve roots of A.T.'s cervical and thoracic spine indicating "possible avulsion injury in the setting of recent childbirth." *Id.* ¶ 78. Upon his discharge from Comer Children's Hospital on April 4, 2021, A.T. was diagnosed with "brachial plexopathy/extraforaminal meningocele with no movement or pain response in his left upper extremity." *Id.* ¶ 80.

After visits to an orthopedic surgeon and additional testing, on May 12, 2021, A.T. was seen by a neurosurgeon who diagnosed him with left pan-brachial plexus injury and Horner's syndrome. *Id.* ¶¶ 81–83. More visits and tests followed. *Id.* ¶¶ 84–85. During a September 8, 2021 visit, the neurosurgeon indicated that "A.T.'s injury is severe and will require surgery." *Id.* ¶ 86. Since then, "A.T. has undergone extensive physical and occupational therapy as well as operative care and treatment," which plaintiffs allege "are the result of the brachial plexus injury he suffered during his birth." *Id.* ¶ 87.

In March 2023, plaintiffs filed suit against Dr. Greeley, Saint Anthony Hospital, Saint Anthony Hospital Foundation, Saint Anthony PHO, LLC, OBHG Illinois, S.C., and Michele Bucciero, M.D. in the Circuit Court of Cook County. *Id.* ¶ 17; *see also Williams v. Saint Anthony Hosp. et al.*, No. 23 CV 4733, [1-1] (N.D. Ill.). Because Dr. Greeley was an employee of an entity receiving federal funds, the

3

government removed the case to federal court in accordance with the Public Health Service Act ("PHSA"), 42 U.S.C. § 233(c),[1] and substituted itself as a defendant, [1] ¶ 19; *see also Williams*, No. 23 CV 4733, [1] ¶ 4. Upon learning that Dr. Greeley is deemed a PHS employee, plaintiffs sent a Notice of Claim to the U.S. Department of Health and Human Services ("HHS"), which HHS received on July 5, 2023. [1] ¶ 18.

Once in federal court, the government moved to dismiss for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 2675(a) because plaintiffs had not yet received a final decision on the claims from HHS. [1] ¶ 19; *see also Williams*, No. 23 CV 4733, [4]. The district court granted the government's motion in October 2023 and dismissed the case without prejudice. [1] ¶ 22; *see also Williams*, No. 23 CV 4733, [22] at 8. Plaintiffs then sent a second Notice of Claim to HHS, which was received on November 14, 2023. [1] ¶ 23. HHS denied plaintiffs' claims by letter on January 31, 2024, citing them as untimely under the FTCA's two-year statute of limitations. *Id.* ¶ 26; *see also* [1-4] at 2–3.

Plaintiffs filed the present complaint against the United States on June 28, 2024, this time having exhausted their administrative remedies with a final determination from HHS. *See generally* [1]; *see also* [1-4] at 2–3. The government moved to dismiss the suit in September 2024. [7]. During a status hearing later that

---

[1] The Federal Supported Health Centers Assistance Act ("FSHCAA") "allows public or non-profit private entities receiving funds under federal health grant programs (as well as their officers, employees, and contractors) to be 'deemed' PHS entities or employees." *See Evans v. United States*, 132 F.4th 473, 478 (7th Cir. 2025) (citing 42 U.S.C. § 233(g)(1) and 42 U.S.C. § 254b). Once deemed PHS employees, these employees are immune from suit and the government must defend any action against them. *See* 42 U.S.C. § 233(a)–(b). Section 233(c) further provides that such suits "shall be removed" to federal court. *See* 42 U.S.C. § 233(c). This is the case here.

4

month, the Court granted the parties' joint oral motion to stay the proceedings pending the Seventh Circuit's decision in *Evans v. United States*, which the parties represented as potentially dispositive of whether the Westfall Act's savings provision applies to plaintiffs' claims. *See* [15]; *see also* [13] at 5. The Seventh Circuit issued its decision in *Evans* on March 13, 2025, [17] ¶ 4, and the parties subsequently completed briefing on the government's motion to dismiss, [19]; [20].

## DISCUSSION

The government moves to dismiss plaintiffs' complaint on the grounds that their administrative claims to HHS were untimely under the FTCA's two-year statute of limitations. [8] at 4–7. Plaintiffs respond that their claims to HHS were timely because they accrued less than two years before they submitted their claims to HHS on July 5, 2023. [19] at 6–9. In the alternative, plaintiffs argue that the Westfall Act's savings clause, 28 U.S.C. § 2679(d)(5), applies to their claims and that the Court should exercise its discretion to equitably toll their claims. *Id.* at 2–5, 10–12. The Court considers each argument in turn.[2]

**A. Claim Accrual Under the FTCA**

"The FTCA waives federal sovereign immunity for tort claims arising from 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where act or omission occurred.'" *Hayes v. Presence Chicago Hosp. Network*, No. 23 C 1749, 2025 WL 947921, at *3

---

[2] The government initially moved to dismiss on the grounds that plaintiffs had not properly served the U.S. Attorney General under Rule 4(i)(1). [8] at 10–11. The government withdrew this ground for dismissal in its reply brief, *see* [20] at 2 n.1, so the Court does not address it.

5

(N.D. Ill. Mar. 30, 2025) (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674. To seek relief under the statute, a plaintiff must present their claim "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Here, plaintiffs presented their claims to HHS on July 5, 2023, *see* [1] ¶ 18, so their claims must have accrued on or after July 5, 2021, to be timely.

"An FTCA claim accrues when either: '(1) the individual becomes subjectively aware of the government's involvement in the injury, or (2) the individual acquires information that would prompt a reasonable person to inquire further into a potential government-related cause of the injury, whichever happens first.'" *P.W. by Woodson v. United States*, 990 F.3d 515, 519 (7th Cir. 2021) (quoting *E.Y. ex. rel. Wallace v. United States*, 758 F.3d 861, 866 (7th Cir. 2014)). Put differently, a "plaintiff's claim accrues the first time the plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury." *Arroyo v. United States*, 656 F.3d 663, 669 (7th Cir. 2011). "An individual does not need to have reason to believe that the relevant governmental conduct was negligent; mere knowledge of the potential existence of a governmental cause is sufficient to start the clock ticking." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

The government contends that plaintiffs' administrative claims to HHS were untimely because they accrued before July 5, 2021. [8] at 4–7. Given the procedural posture, the Court emphasizes the following point of law: The statute of limitations

6

is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses," *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). An exception applies where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Because this issue is presented on a Rule 12(b)(6) motion, the allegations in plaintiffs' complaint must "plainly reveal[]" that the action is untimely. *Id.*; *see also Marable v. United States*, No. 24-CV-2494-DWD, 2025 WL 1663126, at *6 (S.D. Ill. June 12, 2025) (denying timeliness argument on a Rule 12(b)(6) motion because the complaint did not "conclusively establish" plaintiff's claim had accrued more than two years before she presented her claim to HHS). Here, the complaint is silent on when Mary Williams or Antwan Taylor became subjectively aware of the government's involvement in their son's injury. *See generally* [1]. Thus, for the government to prevail on its motion, it must be clear from the complaint that before July 5, 2021, plaintiffs "had reason to suspect that the injury the child suffered related in some way to the medical treatment he received." *P.W. by Woodson*, 990 F.3d at 520 (cleaned up) (quoting *Blanche v. United States*, 811 F.3d 953, 961 (7th Cir. 2016)).

The government argues that plaintiffs' claims were untimely because they "were aware of A.T.'s alleged birth-process injury at the time of birth but no later than May 12, 2021." [20] at 6. In support of their position, they point to the following

7

allegations in the complaint: (1) A.T. was transferred to the neonatal intensive care unit at the University of Chicago's Comer's Children Hospital on March 22, 2021, for shoulder dystocia, [1] ¶¶ 75–76; (2) A.T. was "diagnosed with brachial plexopathy/extraforaminal meningocele with no movement or pain response in his left upper extremity" when he was discharged from Comer's on April 4, 2021, *id.* ¶ 80; (3) A.T. was diagnosed with "suspected left panplexus brachial plexus palsy" in a follow-up appointment with an orthopedic surgeon, *id.* ¶ 81; (4) an electromyography on May 6, 2021, revealed "findings consistent with a severe, leftsided pan-plexopathy, with more significant involvement of the lower trunk," *id.* ¶ 82; and (5) on May 12, 2021, A.T. was diagnosed with left pan-plexus brachial injury and his parents were instructed "to return in 1 month to see whether [A.T.] recovers any function in his left arm," *id.* ¶ 83.

These allegations make abundantly clear that plaintiffs were aware of A.T.'s birth-related *injury* before July 5, 2021. But a "traumatic birth" or "[a]n unfortunate outcome of a medical procedure is not alone a triggering event." *P.W. by Woodson*, 990 F.3d at 521. The law does not require that "all reasonable persons who suffer injuries while under the care of medical professionals assume that their injuries can be attributed to shortcomings in the care they received." *Arroyo*, 656 F.3d at 669. Instead, "[s]omething more is required—[o]ther circumstances that would prompt a reasonable person to investigate the potential cause of the injury." *P.W. by Woodson*, 990 F.3d at 521.

Besides A.T.'s various diagnoses in the first two months of his life, *see infra*, the government only points to the "lack of movement and function in [A.T.'s] left arm" as the "something more" that should have prompted plaintiffs to make a deeper inquiry into the cause of A.T.'s injury.[3] [20] at 7. For support, the government cites to *P.W. by Woodson*, where the Seventh Circuit affirmed the district court's finding that plaintiffs' claim accrued shortly after the infant's birth. 990 F.3d at 521. There, the Seventh Circuit noted that the infant's injury was "immediately evident—his left arm 'just sagged down to his side' and he 'could not move his left arm at all.'" *Id*. But in that case (which was decided with a full record on summary judgment), additional facts supported that plaintiffs' claim had accrued early on. For example, the doctor who delivered the baby acknowledged during prenatal care the risks of delivering an unusually large baby vaginally but decided to proceed with a vaginal birth anyway, "ignoring his prior determination that P.W. should be delivered by C-section." *Id*. The baby subsequently "got stuck" during what plaintiff herself described as a "very traumatic" delivery—something *P.W. by Woodson* acknowledged "could not have happened if P.W. had been delivered by C-section." *Id*. at 520–21.

And in *Blanche* (which the government does not discuss to support this piece of their argument), the Seventh Circuit similarly concluded (also on summary judgment) that the plaintiff's claim accrued shortly after delivery where the baby was

---

[3] Plaintiffs attach affidavits of Mary Williams and Antwan Taylor to their response brief, where both declare that they "did not observe any physical abnormalities when [A.T.] was born." [19-1] ¶ 15; [19-2] ¶ 13. At this stage in the litigation, without converting the government's motion to a motion for summary judgment (which neither party has asked the Court to do), the Court is limited to considering only the facts alleged in plaintiffs' complaint. *See* Fed. R. Civ. P. 12(d).

"unusually large" at birth, was "lodged in the birth canal" during birth, and "had to leave the hospital with her right arm in a splint, which [plaintiff] understood was a result of the difficult delivery." 811 F.3d at 959. Based on this constellation of facts, *Blanche* held that plaintiff, or a reasonable person in her position, "had enough information shortly after Arianna's birth to reasonably inquire into whether Dr. Marsheh caused the injury by inducing labor and delivering the baby vaginally instead of through a C–Section." *Id.*[4]

But here, the government has pointed to no similar allegations in plaintiffs' complaint—for example, advance knowledge that A.T. was an unusually large baby, or a deviation from a birth plan—suggesting that they should have suspected before July 5, 2021, that A.T.'s injury had a doctor-related cause. It hangs its hat on the injury itself.

Moreover, unlike in *P.W. by Woodson* and *Blanche*, here the government has raised the timeliness issue in a Rule 12(b)(6) motion where the Court is limited to considering only the facts alleged in plaintiffs' complaint. When other courts have dismissed FTCA suits on timeliness grounds at this stage, there has been essentially no dispute that the plaintiff's claims were untimely. In *Arteaga v. United States*, for example, plaintiff had explained to a social worker more than two years before filing her claims with HHS that she believed "ultrasounds would have shown that the baby

---

[4] In addition, in *Blanche*, the appeals court noted "plaintiff's decision to meet with an attorney two weeks after giving birth," thus indicat[ing] her subjective belief that her doctor caused her daughter's injury, although the appeals court did not treat this fact as "dispositive." *P.W. by Woodson*, 990 F.3d at 522.

10

was too big for a vaginal delivery" and that her baby's condition "was preventable." No. 10 C 7767, 2012 WL 32983, at *5 (N.D. Ill. Jan. 6, 2012), *aff'd*, 711 F.3d 828 (7th Cir. 2013). By that point, the plaintiff in *Arteaga* had also provided an attorney with her child's medical records to ascertain whether she had a viable legal claim. *Id.* at *2, *6; *see also Washington v. United States*, 668 F. Supp. 3d 816, 819 (N.D. Ill. 2023) (dismissing FTCA claim for lack of timeliness on Rule 12(b)(6) motion because plaintiff did "not appear to dispute[] that [her] FTCA claims accrued at the date of her father's death").

Here, it is not as obvious that plaintiffs' claims accrued before July 5, 2021. Thus, at this stage and on the current record, the Court declines to hold as a matter of law that a reasonable person in plaintiffs' shoes would have suspected before July 5, 2021, that A.T.'s injury had been caused by the medical care he received. *See Marable*, 2025 WL 1663126, at *6 (declining to hold on a Rule 12(b)(6) motion that plaintiff's claims accrued two years before she filed her HHS claims, "particularly given the fact-intensive nature of the inquiry"). Further factual development is needed to determine when a reasonable person would have made a deeper inquiry into a potential doctor-related cause of A.T.'s injury.[5]

---

[5] Although it does not matter to the outcome here, *Arteaga* forecloses plaintiffs' suggestion that their claims could not have accrued until they learned Dr. Greeley is deemed a PHS employee. *See* 711 F.3d at 831–32.

11

## B. The Westfall Act's Savings Provision

In the event their claims are untimely, plaintiffs maintain that the Westfall Act's savings provision, 28 U.S.C. § 2679(d)(5), applies to their claims. [1] ¶¶ 24–25. The savings provision states, in relevant part, that:

> (5) Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a)[6] of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—
>
> (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and
>
> (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

28 U.S.C. § 2679(d)(5).

In *Evans*, the Seventh Circuit addressed whether this provision applies "where the government substitutes itself as a defendant under § 233(c) and removes the case to federal court." 132 F.4th at 478. It held that, "by its terms, the savings provision does not apply" because its language limits its application to cases in which the United States is substituted under "this subsection"—referring to § 2679(d). *Id.* at 478. Because the government in *Evans* replaced the surgeon as a defendant pursuant to § 233(c) of the PHSA and not § 2679(d) of the FTCA, the savings provision did not apply. *Id.*

---

[6] Section 2675(a) is the provision of the FTCA requiring that a plaintiff exhaust their available administrative remedies with the appropriate federal agency before filing suit. For additional background on the Westfall Act, the savings provision, and the PHSA, see *Evans*, 132 F.4th at 476–78.

12

Here, like in *Evans*, the government replaced Dr. Greeley as a defendant pursuant to § 233(c) of the PHSA and not § 2679(d). Plaintiffs nonetheless assert that the savings provision applies post-*Evans*, but none of their arguments are persuasive. [19] at 2–3. First, they argue that the "Seventh Circuit has routinely accepted that the FTCA's savings clause would apply to cases removed by the United States under Section 233(c)." *Id.* at 2. But the only two cases plaintiffs cite for this proposition came before *Evans*, which squarely holds the opposite. 132 F.4th at 478. Second, plaintiffs contend that *Evans* is distinguishable because it did not involve injury to a minor. [19] at 3. Yet the only case they cite for this proposition does not bear on the question presented here, and it is not binding on this Court. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 191 (3d Cir. 2009) (applying equitable tolling where plaintiff exercised diligence in pursuing her claim). Third, plaintiffs argue that the plain language of 42 U.S.C. § 233(c) incorporates the Westfall Act because it provides that "the proceeding is deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto." 42 U.S.C. § 233(c); *see also* [19] at 4. *Evans* already considered and rejected this argument, so the Court need not contemplate it any further. *See Evans*, 132 F.4th at 478–79 (noting that the argument "is not only belied by § 2679(d)(5)'s text, but by the structure and history of the PHSA itself").

Despite plaintiffs' efforts to distinguish it, *Evans* squarely applies because the government substituted itself as a defendant and removed the case to federal court pursuant to § 233(c) of the PHSA. 132 F.4th at 479 (the savings provision applies

13

"only when the United States replaces a federal employee as a defendant under § 2679(d), not § 233(c)"). Per *Evans*, the Westfall Act's savings provision does not apply.

### C. Equitable Tolling

Plaintiffs also ask the Court to equitably toll their claims. [19] at 10. "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Evans*, 132 F.4th at 479 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). "Generally, the plaintiff bears the burden to establish that (1) she 'diligently' pursued her claim; and (2) 'some extraordinary circumstances' prevented her from timely filing her complaint." *Blanche*, 811 F.3d at 962 (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)).

The Seventh Circuit has "rebuffed attempts to rely on the doctrine of equitable tolling based on assertions that the claimant did not know that the doctor in question was employed by a qualifying health center." *Evans*, 132 F.4th at 480; *see also Arteaga*, 711 F.3d at 834; *P.W. Woodson*, 990 F.3d at 524; *Blanche*, 811 F.3d at 962. In this case, plaintiffs contend it "was a secret" that Dr. Greeley was an LCHC employee because they only ever received care from her at Saint Anthony Hospital. [19] at 10–11. They further argue that "[n]either Plaintiffs nor any reasonable person in their place would have discovered Dr. Greeley's employment at LCHC by searching Saint Anthony Hospital's website." *Id.* at 11.

The Court is not convinced this rises to the "extraordinary circumstances" required for equitable tolling. *Blanche*, 811 F.3d at 962. Even if plaintiffs only

14

received care from Dr. Greeley at Saint Anthony Hospital, as the government points out, [20] at 10, a simple internet search would have revealed Dr. Greeley's association with Lawndale. This distinguishes the present case from *Santos*, where plaintiff's counsel had identified the employer receiving federal funds and performed a public-records search that did not reveal the entity's federal status. *Santos*, 559 F.3d at 203 (applying equitable tolling where the government had "not identified … any publicly available sources of information from which [plaintiff] could have learned" that the hospital's employees were covered by the FTCA). Mary Williams also received routine prenatal care at Lawndale and, at her last prenatal visit, Lawndale scheduled her to be induced at Saint Anthony Hospital. *See* [1] ¶¶ 48–49. It is therefore not surprising that the doctor who eventually delivered her baby was a Lawndale employee.

Other courts have declined to equitably toll claims in similar circumstances where publicly available information "would have revealed that the employees were deemed federal for purposes of malpractice suits." *See Hernandez v. United States*, No. 23 CV 11179, [17] at 4 (N.D. Ill. May 27, 2025) (declining to equitably toll claims even though the medical center where the allegedly unlawful conduct occurred was not listed on the public website of federally funded health centers). Indeed, "[m]edical malpractice attorneys have an obligation upon being retained by a new client to research the possible defendants at issue." *Blanche*, 811 F.3d at 962. "This research involves examining whether the possible defendants are federally affiliated, and thus can only be sued under the FTCA." *Id.* If an attorney fails to ascertain the relevant statute of limitations, "the remedy is not to punish the defendant by depriving him of

15

the protection of the statute of limitations; it is for the plaintiff to sue the lawyer who misadvised him for legal malpractice." *Arteaga*, 711 F.3d at 834.

For these reasons, equitable tolling is not appropriate here.

## CONCLUSION

For the foregoing reasons, the Court denies the government's motion to dismiss. The government has until July 7, 2025, to answer plaintiffs' complaint. *See* Fed. R. Civ. P. 12(a)(4)(A). By July 18, 2025, the parties are directed to file a joint status report proposing a discovery plan; discussing whether discovery should be initially limited to determining the point at which plaintiffs' claims accrued; and apprising the Court of the parties' interest in settlement discussions. The parties are directed to appear on 7/28/25 at 9:30 a.m. for a status hearing.

_____
Georgia N. Alexakis
United States District Judge

Date: 6/20/25